NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

LINDSAY MOZENA, *Petitioner/Appellee,*

*v.*

VINCENT KRATER, *Respondent/Appellant.*

No. 1 CA-CV 25-0707 FC

FILED 04-27-2026

Appeal from the Superior Court in Maricopa County
No. FN2025-091157
The Honorable John R. Doody, Commissioner

**REMANDED**

COUNSEL

Roddy & Urness PLLC, Scottsdale
By Michelle J. Roddy
*Counsel for Petitioner/Appellee*

Genesis Legal Group, Glendale
By Kevin Jensen
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Veronika Fabian joined.

---

**H O W E**, Judge:

¶1　　　　Vincent Krater ("Husband") appeals the superior court's grant of an order of protection in favor of Lindsay Mozena ("Wife"). For the reasons below, we remand for the superior court to state with particularity the statutory grounds for its finding.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Wife has two children born before her marriage to Husband: Brandon, born in 2009 and Kevin, born in 2011 (pseudonyms). While in the divorce process, the parties agreed to a no-contact order as a binding agreement under Arizona Rule of Family Law Procedure 69. This order prohibited the parties from contacting each other, and Husband from contacting Brandon and Kevin. On March 20, 2025, Wife signed a consent decree that, in addition to settling the divorce, dismissed the no-contact order. Less than a week later, Wife noticed Husband's truck was following her car. Wife filed for an order of protection against Husband, alleging that he followed her and stalked and harassed her children. The court granted the order the same day.

¶3　　　　Husband requested a hearing. The court limited the hearing to 50 minutes, giving each side 20 minutes. Mother's counsel objected, requesting two hours and stating that "[t]here is no way that I will be able to get through all of the information in the Petition in . . . 15 or 20 minutes." The court denied the request. Both parties agreed to enter all the exhibits into evidence to save time, but the court rejected the stipulation claiming "then I'm expected to read all of them." It then agreed to the stipulation under the condition that it would "only have to read the ones — the areas of the exhibits that [the parties] point [it] to." Throughout the hearing, counsel expressed concerns about the time limitation and the court provided reminders about the parties' remaining time.

¶4　　　　Wife, Husband, Brandon, and Kevin all testified. Wife testified that "[a]ny time [Husband] would get upset or angry" he would

get "very close to your face" with his hand or fist in "a very threatening and intimidating manner." She also testified that, just after she agreed to drop the no-contact order as part of the decree, she saw Husband, in his truck, following her car for 15-20 minutes. That evening, she also noticed a hole and a tracker on her car and that her "son's car was also tampered with." Wife's evidence included a video of a truck behind her and a photo of the hole in her car. She explained that she did not have additional evidence of the tracker because it was removed, but that police did a report on her car. She declined to admit the report into evidence because she did not wish to seek criminal charges. And she testified that Husband had contact with Kevin during the no-contact order. At the end of Wife's testimony, counsel inquired as to the time left and the court informed her "that is all you can do." Counsel then ceased questioning.

¶5 Kevin testified that, while Husband lived with them, he had pushed him and "raise[d] his hand . . . as if he was going to hurt [him] . . . multiple times." He also testified that, during the no-contact order, Husband came into a barbershop where he was and spoke to him, which made him feel "[s]cared and a little upset." Brandon testified that, when he and Husband "would get in an argument," Husband would use "physical force" in an aggressive manner, "physically hurt[ing]" him. Brandon also testified that Husband threatened him "many times" by putting up his fist or pushing him out of the way. He explained that, although he did not always have a poor relationship with Husband, after Husband left, he began to see "the side of him" that was very "threatening and aggressive." Brandon also testified that Husband made eye contact with him at a Top Golf location, although Husband did not speak to him.

¶6 At the end of Wife's case, her counsel stated:

> I have a lot of other arguments that I would like to make. And I have a lot of exhibits that I would like to talk about. But I understand the time limitation. So I just want to make the record clear that I am asking for more time, and I am asking for me to be given time to talk about each of the exhibits.

The court denied the request, explaining that "I said at the beginning that given the time limits and you only need to prove one act of domestic violence, you should prioritize your claims on the most impactful ones and the ones that are easiest to prove. And so I assume you have done that."

¶7 Husband testified that he would wrestle with Kevin and Brandon or get between them when they fought, but that he "[n]ever struck

them" or caused them "any harm." He expanded that he had "never been physical" with Wife. He testified that he did not have any tracking devices and that the truck in Wife's video was not his. Husband also explained that he went to a barbershop near his home and sat down for a haircut before he realized that Kevin was in the shop. He claimed that he did not speak to Kevin, but nodded in acknowledgment and left without letting the barber finish the haircut. He testified that he had immediately emailed his attorney to let her know what happened and asked if seeing Kevin would be an issue. Husband also testified that, although he goes to Top Golf regularly, he "didn't even see" Brandon there. Finally, he testified that his plan going forward was to "move forward with [his] life" having "no contact with [Wife] nor [] the boys."

¶8    The court then affirmed the order of protection, finding that "as innocuous as some of these contacts were, I think it would have made a reasonable person in her situation feel seriously alarmed, annoyed, or harassed." The court found Wife's testimony about Husband following her car credible and sufficient to show an incident of domestic violence: "[f]ollowing her is something that, again, would have made a reasonable person in her position feel seriously alarmed, annoyed or harassed, and in fact made her feel that way too."

¶9    Husband appealed and we have jurisdiction. A.R.S. § 12-2101(A)(5)(b); Ariz. R. Prot. Order P. 42(a)(2).

## DISCUSSION

¶10    Husband argues that the superior court abused its discretion in sustaining the order of protection "where there was no evidence of any repeated harassment or repeated stalking." He claims that "the record [was] devoid of competent evidence to satisfy the statutory requirements of domestic violence."

¶11    We review the continuation of an order of protection for abuse of discretion. *Vanwormer v. Lopez*, 259 Ariz. 87, 89 ¶ 6 (App. 2025). "A court abuses its discretion when it commits an error of law in the process of reaching a discretionary conclusion or when the record, viewed in the light most favorable to upholding the trial court's decision, is devoid of competent evidence to support the decision." *Mahar v. Acuna*, 230 Ariz. 530, 534 ¶ 14 (App. 2012) (cleaned up). We defer to the superior court's assessments about conflicting evidence and witness credibility. *Vanwormer*, 259 Ariz. at 90 ¶ 9.

4

**¶12** The court shall issue an order of protection if it finds "reasonable cause to believe" that "[t]he defendant has committed an act of domestic violence within the past year or within a longer period of time if the court finds that good cause exists to consider a longer period." A.R.S. § 13-3602(E). Here, the court found that "a reasonable person in [Wife's] situation" would feel harassed. Harassment is an act of domestic violence. *See* A.R.S. §§ 13-3601(A), -2921. Under A.R.S. § 13-2921(A):

> A person commits harassment if the person knowingly and repeatedly commits an act or acts that harass another person or the person knowingly commits any one of the following acts in a manner that harasses:
>
> 1. Contacts or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means.
>
> 2. Continues to follow another person in or about a public place after being asked by that person to desist.
>
> 3. Surveils or causes a person to surveil another person.
>
> 4. Makes a false report to a law enforcement, credit or social service agency against another person.
>
> 5. Interferes with the delivery of any public or regulated utility to another person.

**¶13** Here, Wife testified that, shortly after agreeing to dismiss the no-contact order, Husband followed her car for 15-20 minutes. She also testified that she "was scared so [she] went to Pecos storage where I knew an off-duty trooper was sitting." She introduced a video taken from her car of a truck behind her on the road. The audio of the video includes discussion from the occupants of the car indicating they were disturbed by the truck's presence. Wife also testified that Husband placed a tracker on her car. The court found Wife's testimony credible, and we do not re-weigh the court's credibility determinations. *Vanwormer*, 259 Ariz. at 90 ¶ 9.

**¶14** As Husband notes, the court failed to specify under which subsection it found harassment. It referred to "following" which, as set out in subsection 2 of A.R.S. § 13-2921(A) requires a request to desist from the harassed party. *See* A.R.S. § 13-2921(A)(2). The record does not support that Wife made any such request of Husband during the "following" incident. Subsection 3 provides that harassment occurs when a person knowingly

"surveils or causes a person to surveil another person," and may better fit the facts as presented. A.R.S. § 13-2921(A)(3). But the court made no reference to surveillance, and Arizona Rule of Protective Order Procedure 38(g)(4) requires that "[a]t the conclusion of the hearing, the judicial officer must state the basis for continuing, modifying, or revoking the protective order." Thus, the court erred in not specifying sufficient legal and factual basis for its finding of harassment.

**¶15** Husband also argues that harassment requires repeated actions. But harassment may be found even if it occurs only once. *See* A.R.S. § 13-2921 (harassment occurs if "the person knowingly commits *any one* of the following acts in a manner that harasses . . .") (emphasis added). Repeated incidents are not required for the court to find harassment.

**¶16** Wife requests attorney's fees pursuant to Arizona Rule of Civil Appellate Procedure 21(a) and 25 as well as A.R.S. §§ 25-324, 12-349, and 13-3602. We decline Wife's request without prejudice to an award to either party at the conclusion of this matter.

## CONCLUSION

**¶17** We remand for the superior court to state with particularity the legal and factual grounds for its finding. *See* Ariz. R. Prot. Order P. 38(g)(4). The court need not hold an additional hearing.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR